296 So.2d 473 (1974)
TOWN OF PALM BEACH et al., Petitioners,
v.
Jules T. GRADISON, Respondent.
TOWN OF PALM BEACH et al., Petitioners,
v.
Fred GLADSTONE, Respondent.
TOWN OF PALM BEACH et al., Petitioners,
v.
FAIRMONT CONVERTING CO., INC., Respondent.
TOWN OF PALM BEACH et al., Petitioners,
v.
Morris LANSBURGH, Respondent.
TOWN OF PALM BEACH et al., Petitioners,
v.
Perry KAYE, Respondent.
TOWN OF PALM BEACh et al., Petitioners,
v.
Ralph H. SHERE et al., Respondents.
TOWN OF PALM BEACH et al., Petitioners,
v.
Walter PORANSKI et Ux., Respondents.
TOWN OF PALM BEACH et al., Petitioners,
v.
FIRST BANK AND TRUST CO. OF BOCA RATON, Etc., Respondents.
Nos. 44099 to 44106.
Supreme Court of Florida.
May 1, 1974.
Rehearing Denied July 10, 1974.
*474 Chester Bedell and John A. DeVault, III, Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, and Burns, Middleton, Farrell & Faust, Palm Beach, for petitioners.
H.L. Cooper, Jr., O'Connell & Cooper, West Palm Beach, for Jules T. Gradison, Morris Lansburgh, Perry Kaye, Ralph H. Shere and Walter Poranski.
Larry B. Alexander, Jones, Paine & Foster, West Palm Beach, for Fred Gladstone and Fairmont Converting Co., Inc.
Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, Chicago, Ill., and Fisher, Prior, Pruitt & Schulle, West Palm Beach, for First Bank and Trust Co. of Boca Raton.
ADKINS, Chief Justice.
By petition for writ of certiorari, we have for review the consolidated cases arising out of a decision of the District Court of Appeal, Fourth District (IDS Properties, Inc. v. Town of Palm Beach, 279 So.2d 353), which is accompanied by a certificate of the District Court of Appeal that its decision has passed upon a question of great public interest, to-wit:
"Whether a zoning ordinance adopted by zoning authorities and the Town Council after public hearings is rendered invalid under the § 286.011, F.S. 1971, [F.S.A.], Government in the Sunshine Law, because of the nonpublic activities of a citizen's planning committee which committee was established by the town council and acting on behalf of the council in an advisory capacity participated in the formulation of the zoning plan."
We have jurisdiction. Fla. Stat., art. V, § 3(b)(3), F.S.A.
The Town Council of the Town of Palm Beach, hereinafter referred to as "Town Council," passed a resolution providing that the Council would undertake the updating and revision of the town zoning ordinances. Interviews were held with a planning firm, hereinafter called "Planners," and, at a public meeting, the Town Council authorized a contract with the Planners. A citizens' planning commission was decided upon and chosen by the Town Council at a nonpublic administrative meeting. The nominees were told that the Town Council had nominated each one to serve on the town planning committee for the purpose of guiding the Planners in their efforts to assure that the plan produced would be consistent with the character, image and land-use controls intended by the citizens. Changes in the plan during its formulation were made by the Planners to reflect the decisions of the planning committee.
The planning committee, a lay group of citizens, were not regularly employed personnel of the Town. The members of the committee were not landscape or civil engineers nor expert vocational zoning planners performing their work outside the scope of the sunshine law. Neither were they contractors engaged by the Town for making zoning studies, surveys or plans. To the contrary, they were a buffer lay group of citizens to serve part-time as the alter egos of the Town Councilmen to make tentative decisions guiding the zoning planners and advising the Council as to their ultimate zoning ordinances. In other words, the Council delegated to the committee much of their administrative and legislative decisional zoning formulation *475 authority which is ordinarily exercised by a city-governing body itself  and particularly the position of the process where the affected citizens expect to be officially heard. Thus, the nature of the committee and its function reached the status of a board or commission that to act legally must comply with the sunshine law.
The trial court specifically found that the Planning Advisory Committee meetings with the Planners were not open to the public, nor were minutes taken. These meetings were numerous and detailed.
At a joint meeting of the Town Council and the planning committee the role of the committee was explained. The Town Council was of the opinion the committee should work as an "element" of the zoning commission, and further, that the Town Council had the authority to override any changes induced by the zoning commission and "would do so without timidity." This joint meeting was held without notice, without members of the public or press present, and no official minutes were taken or recorded.
Thereafter, the President of the Town Council and various members of the zoning commission met with the town manager and were finally advised as to the operation of the committee. An agenda was prepared for presentation of the tentative comprehensive plan to a meeting of the Town Council. At that meeting the plan was discussed. Further executive sessions of the zoning commission were held.
Thereafter, full public meetings and hearings of the zoning commission and of the Town Council were conducted and proper procedure followed. The comprehensive zoning plan was approved in essentially the same form as that which had been produced by the consultants and the planning advisory committee.
The government in the sunshine law contains the following:
"(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting." Fla. Stat. § 286.011, F.S.A.
The only question to be determined is whether the citizens planning commission composed of private citizens, which was established by the Town Council and the members thereof appointed by the Town Council, was subject to the government in the sunshine law.
Every meeting of any board, commission, agency or authority of a municipality should be a marketplace of ideas, so that the governmental agency may have sufficient input from the citizens who are going to be affected by the subsequent action of the municipality. The ordinary taxpayer can no longer be led blindly down the path of government, for the news media, by constantly reporting community affairs, has made the taxpayer aware of governmental problems. Government, more so now than ever before, should be responsive to the wishes of the public. These wishes could never be known in nonpublic meetings, and the governmental agencies would be deprived of the benefit of suggestions and ideas which may be advanced by the knowledgeable public.
Also, such open meetings instill confidence in government. The taxpayer deserves an opportunity to express his views and have them considered in the decision-making process.
Those who do not attend public meetings are given ample opportunity to participate in government by securing information of governmental activities from the news media. Responsible reporting of governmental activities results in letters or telephone calls from interested citizens so that governmental officials are given the benefit of *476 both sides of the question. No governmental board is infallible and it is foolish to assume that those who are elected or appointed to office have any superior knowledge concerning any governmental problem. Every person charged with the administration of any governmental activity must rely upon suggestions and ideas advanced by other knowledgeable and interested persons. As more people participate in governmental activities, the decision-making process will be improved.
Few, if any, governmental boards or agencies deliberately attempt to circumvent the government in the sunshine law. We feel that the Town Council of Palm Beach acted in good faith, but any committee established by the Town Council to act in any type of advisory capacity would be subject to the provisions of the government in the sunshine law.
The citizens' planning committee was not an organization formed by any civic group such as a taxpayer's league, better government league, civic association, etc. It was conceived and formed by the Town Council for the purpose of working with the planning consultant so that the plan produced would be consistent with the land-use controls intended by the citizens. The citizens' planning committee was an arm of the Town Council.
The Legislature would have no right to require meetings of civic organizations, unconnected with municipal government, to conform to the government in the sunshine law. However, a subordinate group or committee selected by the governmental authorities should not feel free to meet in private. The preponderant interest of allowing the public to participate in the conception of a proposed zoning ordinance is sufficient to justify the inclusion of this selected subordinate group, within the provisions of the government in the sunshine law.
Cases from other jurisdictions dealing with the scope of similar statutes compel the conclusion that bodies such as the Palm Beach Planning Committee selected by the Town Council are governed by Fla. Stat. § 286.011, F.S.A.
In Raton Public Service Co. v. Hobbes, 76 N.M. 535, 417 P.2d 32 (1966), the Board of Directors of a city-owned electric utility were held to be within the scope of a statute governing "all other governmental boards and commissions."
In Glick v. Trustees of Free Public Library, 2 N.J. 579, 67 A.2d 463 (1949), trustees of the Library were held to be within the purview of a statute requiring the "governing body" to advertise for bids.
In the case of Bogert v. Allentown Housing Authority, 426 Pa. 151, 231 A.2d 147 (1967), the Pennsylvania Supreme Court, interpreting that State's "right to know" statute, stated:
"Within the past several decades we have witnessed the creation of these public bodies called `authorities' which have been granted the power to, and do, perform important governmental functions which vitally affect the public. Unlike other public bodies, the members of the `authorities' are appointed and not elected and are not directly responsible for their actions to the electorate. If the elected members of public bodies are to be subjected to public disclosure of their actions, how much more important that the appointed members of public bodies be required to make such disclosure." (p. 151)
In Beacon Journal Publishing Co. v. City of Akron, 3 Ohio St.2d 191, 209 N.E. 399, 404 (1965), it was held that a city planning commission created by the city charter with "such other powers and duties as the council may confer upon the planning commission," was subject to the open meeting provision of the Akron City Code which applied to "any board or commission ... created by the charter or by action of council."
*477 In Lhormer v. Bowen, 410 Pa. 508, 188 A.2d 747, 749 (1963), a proposed rezoning ordinance was held ineffectual to restrict the issuance of a building permit, one of the reasons being the failure of the planning commission to hold a public hearing on its preliminary report before submitting a final report to the borough council for action, as required by the zoning enabling legislation.
In Sacramento Newspaper Guild v. Sacramento County Board of Supervisors, 263 Cal. App.2d 41, 47, 69 Cal. Rptr. 480, 485 (1968), California's Third District Court of Appeal upheld an injunction restraining the Sacramento County Board of Supervisors, and its committees, from holding informal meetings in violation of the Brown (California) Act. It held that there was nothing in the new Brown Act "to demarcate a narrower application than the range of governmental functions performed by the agency." It further held the Act applied not only to "action" but also to "deliberative gatherings ... however confined to investigation and discussion." Noting the widespread evasion of pre-Brown Act open-meeting statutes "through unannounced `sneak' meetings and through indulgence in euphemisms such as executive session, conference, caucus, study or work session, and meeting of the committee of the whole," the court concluded that the statute could be pushed "beyond debatable limits" to block such evasive techniques. The court continued:
"An informal conference or caucus permits crystallization of secret decisions to a point just short of ceremonial acceptance. There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices. As operative criteria, formality and informality are alien to the law's design, exposing it to the very evasions it was designed to prevent. Construed in the light of the Brown Act's objectives, the term `meeting' extends to informal sessions or conferences of the board members designed for the discussion of public business." (p. 487)
One purpose of the government in the sunshine law was to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance. Rarely could there be any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency, and relates to any matter on which foreseeable action will be taken.
The principle to be followed is very simple: When in doubt, the members of any board, agency, authority or commission should follow the open-meeting policy of the State. See Florida Law Review, Government in the Sunshine by Ruth Mayes Barnes, Vol. XXIII, 361, 365 (Winter 1971).
Mere showing that the government in the sunshine law has been violated constitutes an irreparable public injury so that the ordinance is void ab initio. Times Publishing Co. v. Williams, 222 So.2d 470 (Fla.App.2d 1969). Florida Law Review, Government in the Sunshine by Ruth Mayes Barnes, Vol. XXIII, p. 369 (Winter 1971).
Although a criminal prosecution requires proof of scienter (Board of Public Instruction of Broward County v. Doran, 224 So.2d 693, 699 (Fla. 1969)), an unintended violation of the government in the *478 sunshine law will negate any action taken by the Town Council. Fla. Stat. § 286.011, F.S.A.
The Superior Court of New Jersey in Wolf v. Zoning Board of Adjustment of the Borough of Park Ridge, 79 N.J. Super. 546, 192 A.2d 305 (1963), held that the proper implementation of their "Right to Know Law" requires the court upon proper application to set aside any official action taken without compliance, even in the absence of bad faith, saying:
"The trial judge noted, and the defendant officials stress, that the act states that `official action taken in violation of the requirements of this act shall be voidable [Emphasis theirs.] in a proceeding in the Superior Court,' thereby supposedly indicating a legislative intent that the voiding of such action should rest in the discretion of the judge. The court concluded that since no impropriety or bad faith on the part of the board was indicated, it should exercise its discretion to permit the action to stand. We think the court took too narrow a view of the intent and underlying policy of the statute. The purpose of the act, as reflected in N.J.S.A. 10:4-1, is to implement the declaration therein that it is `the public policy of this State to insure the right of the citizens of this State to attend meetings of public bodies * * * for the protection of the public interest.' In other words, the object of the act is primarily prophylactic, and not necessarily restricted to creation of a remedy for illegalities at particular public meetings from which the public is excluded. Appropriate implementation of that object and policy calls, as a general rule, for the Superior Court upon proper application to set aside any official action, as defined by the act, which is taken without compliance with the prescriptions of the statute, as here. We need not now decide that no discretion is ever to be reserved to the court to save the validity of official action taken in contravention of the statute. That question may be left to await a case where a sufficiently impelling counter-interest may be argued to bespeak sustaining the action impugned. It suffices here to say that mere absence of bad faith or other impropriety on the part of the public body should not ordinarily move the court to stay its hand in voiding official action taken contrary to the statute upon proper application therefor." (Emphasis supplied.) (pp. 308-309)
Fla. Stat. § 286.011(1), F.S.A., specifically provides that "no resolution, rule, regulation or formal action shall be considered binding" where the government in the sunshine law is violated. We follow the reasoning of the New Jersey court in Wolf v. Zoning Board of Adjustment of the Borough of Park Ridge, supra.
Answering the question presented by the District Court of Appeal in the case sub judice, we hold that the zoning ordinance adopted by the zoning authorities and the Town Council after public hearing was rendered invalid because of the non-public activities of the citizens planning committee, which committee was established by the Town Council, active on behalf of the Council in an advisory capacity, and participated in the formulation of the zoning plan. We approve the decision of the District Court of Appeal.
Having answered the certified question, this cause is remanded to the District Court of Appeal for further proceedings in accordance with the views expressed herein.
It is so ordered.
ERVIN, BOYD and McCAIN, JJ., concur.
DEKLE, J., dissents with opinion.
ROBERTS, J., dissents and concurs with DEKLE, J.
DEKLE, Justice (dissenting):
The Town Council, upon determining that an updated zoning plan was advisable for the Town of Palm Beach, employed a *479 professional planning firm for the purpose of preparing such a plan. In addition, the Town Manager named five citizens from a group recommended by council members to serve as guides to the professional consultants in the preparation of the comprehensive zoning plan. The crux of the problem before this Court is that this group, the Advisory Planning Committee, held its meetings without public attendance or involvement.
The plan finally proposed by the consultants was adopted, with some modifications, by the Zoning Commission and Town Council, following public meetings and discussion. The adoption of the plan was accordingly carried out "in the sunshine."
The controlling statutory law in this case is, of course, Fla. Stat. § 286.011 F.S.A., which provides:
"(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting.
"(2) The minutes of a meeting of any such board or commission of any such state agency or authority shall be promptly recorded and such records shall be open to public inspection... .
"(3) Any person who is a member of a board or commission or of any state agency or authority of any county, municipal corporation or any political subdivision who violates the provisions of this section by attending a meeting not held in accordance with the provisions hereof is guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083." (emphasis added)
The role of the Advisory Planning Committee was well defined by the learned trial judge in a memorandum order:
"This was an ad hoc committee of local residents familiar with the character, historical background and desired future development of the Town. It was the committee's function to transmit to the Planner that information and to advise with it so that the eventual plan would be compatible with the known desires of the community. This committee of citizens, while influential in what the Planner ultimately produced, was merely advisory as far as the Planner, the Zoning Commission and the Town Council were concerned. They made no decision which bound either the Zoning Commission or the Town Council. Much of what the Planning Committee did with the planner could have been done by the Town Manager, or some of the Town's staff, or the Planner could have sought out residents on its own initiative for advice and assistance in preparing the plan."
The trial judge concluded that the acts complained of did not fall within the purview of the Sunshine Law.
The district court of appeal reversed the trial court's finding, reasoning that the Town Council should not be able to do by proxy that which it is forbidden to do itself by Fla. Stat. § 286.011, F.S.A., suggesting that the Planning Committee had de facto authority to act on behalf of the Town Council, so that it must stand in the shoes of the Council in regard to the Government in the Sunshine Law. In the words of the district majority opinion:
"Although, admittedly, the zoning plan was `born' when the Town Council (acting in the sunshine) voted upon the ordinance at a public meeting, the `conception', which is an inseparable part of the life-giving process, took place (in the dark) with the appointment of the Citizens' Planning Committee. The zoning ordinance was, therefore, not conceived *480 eo instanti at the public meetings held by the Town Council and Zoning Commission. It was the product of the deliberations and actions of the Citizens' Planning Committee acting as the alter ego of the Town Council; the action of the Citizens' Planning Committee was an indispensable requisite to and integral part of the `official acts' or `formal action' of the Town Council." 279 So.2d 353, 356.
The question presented in the case sub judice is one of first impression in this State. The effect of the "Government in the Sunshine" Law has been considered in the past as it applies to various boards and commissions of elected officials, the terms used in the statute. But it has never before been suggested, by either the Courts or the Legislature, that meetings of all unofficial and purely advisory groups be likewise public and give notice of meetings held and otherwise act to insure that their meetings are "public." The statute simply does not include such persons.
Should the Legislature choose so to extend the Act, then would be the time to so hold, but not by this precipitous judicial extension thereof without the benefit of the majority's own requirement of a "marketplace of ideas" first allowed to be debated by the citizens' elected representatives in the Legislature. Let the same worthy principle be applied in both instances. "Consistency, what a jewel thou art."
The Legislature having chosen not to include such advisory and purely private groups under the mandate of the statute, the Courts are powerless to extend the statute beyond the clear intent of the Legislature. As this Court has stated:
"In construing or interpreting the words of a statute it should be born in mind that the courts have no function of legislation, and seek only to ascertain the will of the Legislature. The courts may not imagine an intent and bend the letter of the act to that intent, much less, says the Maryland court, `can we indulge in the license of striking out and inserting and remodeling with the view of making the letter express an intent which the statute in its native form does not evidence.'" Fine v. Moran, 74 Fla. 417, 77 So. 533, 536 (1917).
Despite the majority's assertion to the contrary, the extension of the statute here asserted would as logically apply also to gatherings of civic groups which meet with elected officials to discuss or recommend suggested legislation, resulting in the invalidation of otherwise quite proper "sunny" subsequent decisions by such officials because in all innocence no notice to the press and the public might have issued for the occasion. Likewise, all organizations dedicated to the swaying of public opinion and the initiation of public action later taken by a public body  be it a private group of legislative lobbyists, the League of Women Voters or the editorial board of a civic-minded publication  would have to welcome public involvement in their decision-making processes to avoid "tainting" such officials' subsequent decisions in public.
In the most recent pronouncement by this Court on the "Sunshine" issue, it was decreed that a county school board sitting in a quasi-judicial matter is still required to meet in the "Sunshine." Canney v. Board of Public Instruction of Alachua County, 278 So.2d 260 (Fla. 1973). This Court has previously held that executive sessions of school boards (Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969)), or city councils (City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971)), must be in the "Sunshine," reasoning:
"A secret meeting occurs when public officials meet at a time and place to avoid being seen or heard by the public. When at such meetings officials mentioned in Fla. Stat. § 286.011, F.S.A., *481 transact or agree to transact public business at a future time in a certain manner they violate the government in the sunshine law, regardless of whether the meeting is formal or informal." City of Miami Beach v. Berns, supra, at 41. (Emphasis added).
However, both cases involved meetings of officials mentioned in the statute, to-wit:
"[A]ny board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution." Fla. Stat. § 286.011(1), F.S.A.
Nothing in the statute or in the prior decisions of the courts of this State dictates or even hints that the "Government in the Sunshine" Law is intended to go beyond elected or officially appointed boards. In fact, it is constitutionally questionable in light of the freedoms of speech and peaceable assembly guaranteed by the U.S. Const., Amendment I, and by Fla. Const., art. I, §§ 4, 5, F.S.A., to forbid private citizens to meet and discuss matters of public concern merely because their ideas are to be transmitted to a firm of professional planners and consultants, and because their ideas might be incorporated into a suggested plan which might then pass muster before the public in full hearings, and before two public bodies meeting in the "Sunshine," as occurred sub judice. The Citizens' Planning Committee working with the professional planner here cannot, under any reasonable theory, be equated with such a public "board or commission." These were solely private citizens, unsalaried volunteers.
In my view, the language of the statute mandates that the fact that a purely advisory group of private citizens did not hold public meetings, is not a violation of Fla. Stat. § 286.011, F.S.A., such as to void official action later taken in the "Sunshine" by the Zoning Commission over a period of five days of public hearings and debate and thereafter, by the City Council, after six days of public hearings at which the only decisions were made. The fact that a private advisory group provided a part of the input which resulted in the plan presented to the official bodies for consideration is at best a preliminary planning aid which is entirely subject to the will ("decisions") of the Commission and the Council (official body). It only provided a starting point from which the Commission could start to work and into which the public could inject its contentions and plans to be incorporated or substituted as the public body should decide. The "marketplace of ideas" occurs at that point and total input from the public is therefore not denied.
Where it can be shown that a public body has intentionally, and for the purpose of avoiding the light of public scrutiny, appointed a board of non-elected citizens to determine for the elected board what course should be pursued, and where the actions of the private citizens are in any way binding upon the elected officials, a different situation would be presented. No such evidence or any indication of collusion between the Town Council and the Citizens' Planning Committee has been found in the case sub judice. No intentional or incidental wrongdoing or collusion has been shown. If such collusion and impropriety of purpose had been made to appear, then the hearings of the private committee could be viewed as an alter ego extension of the official board, and thus amenable to the "Sunshine." This is not the case.
So long as the Committee has been advisory only, and the Zoning Commission and Town Council have remained free to view the suggested comprehensive plan as objectively as though it had been prepared solely by the hired consultants, and have made the decisions in the "Sunshine," the requirements of the statute have been met. See Basset v. Braddock, 262 So.2d 425 *482 (Fla. 1972). Accordingly, the question posed by the District Court of Appeal, Fourth District, as stated, should have been answered in the negative.
I therefore most respectfully must dissent.
ROBERTS, J., concurs.