The Honorable Alvin J. Taylor Secretary, Department of Health and Rehabilitative Services
QUESTIONS:
1. Are meetings of a bid evaluation team of the Department of Health and Rehabilitative Services subject to the provisions of the Government in the Sunshine Law when such term meets to review and evaluate bids received by the Department in response to a request for proposal?
2. Are contract negotiations between a contract negotiation team of the Department of Health and Rehabilitative Services and the contractor who submits the winning bid proposal in response to a request for proposal subject to the provisions of the Government in the Sunshine Law?
SUMMARY:
Until judicially determined otherwise, the meetings of a `bid evaluation team' or a `contract negotiation team' of the Department of Health and Rehabilitative Services which are held to evaluate proposed service bids submitted to the Department and to negotiate a proposed contract with the winning bidder are not subject to the requirements of the Government in the Sunshine Law.
You state in your letter that the department enters into contracts for certain kinds of services by utilizing the Request for Proposal (RFP) method. As I understand it, this method entails developing a document (the RFP) which identifies the problem to be solved, outlines the service objectives required, and specifies any technical requirements which must be complied with. The RFP is sent out to those individuals or businesses which are known to be capable of providing the services desired, and they are invited to submit a bid proposal to the department which is responsive to the RFP. According to your letter, those proposals received by the department are passed on to an informally designated `bid evaluation team,' the function of which is `to review the bid proposals to determine whether each potential provider complied with the terms of the RFP, to reject those bids which are not responsive to the RFP, and to analyze and rank remaining bids based upon criteria outlined in the RFP and to organize the results of the evaluation to identify top bidders.' You state that the `bid evaluation team' consists of at least 3 department employees designated by the contract manager and contract administrator. The `bid evaluation team' has no authority to award the bid to any particular respondent. That authority is exercised by the agency head based upon the recommendations made by the evaluation team. Once a decision has been reached concerning whose proposal will be accepted, the selected bidder is asked to meet with the `contract negotiation team' to develop a detailed service contract which is then reviewed and approved by the department head. Like the `bid evaluation team,' the `contract negotiation team' consists of department employees who are selected by the contract manager and contract administrator. The `contract negotiation team,' like the `bid evaluation team,' has no power to bind the department, and its actions are strictly advisory in nature. You have asked my opinion as to whether the meetings of these department `teams' are subject to the Government in the Sunshine Law. Under the factual circumstances as set out in your letter and for the reasons set forth in the remainder of this opinion, I conclude that such meetings need not be held in the sunshine.
Section 286.011, F.S., otherwise known as the Sunshine Law, provides in pertinent part that `[a]ll meetings of any board or commission of any state agency . . . at which official acts are to be taken are declared to be public meetings open to the public at all times . . . .' See s. 286.011(1), F.S. By its express terms, then, the Sunshine Law applies only when a board or commission of a state agency (or other agency or authority covered by the law) meets for the purpose of taking official action. It has long been recognized, however, that the Sunshine Law applies to the entiredecision-making process and not merely to the formal meeting at which final, official action is taken. Thus, in holding that informal conference sessions of a county board at which no formal or final official action was taken were nevertheless subject to the Sunshine Law, the Supreme Court stated that `[t]he obvious intent [of the Sunshine Law] was to cover any gathering of the members where the members deal with some matter on which foreseeable action will be taken by the board.' Board of Public Instruction of Broward County v. Doran, 224 So.2d 693, 698 (Fla. 1969). And see Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974); City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971); and Times Publishing Company v. Williams, 222 So.2d 470 (2 D.C.A. Fla., 1969). It has also been recognized that a board or commission subject to the mandate of the law cannot circumvent its public meeting requirements by appointing a citizen's advisory committee to conduct some part of the decision-making process in private. Town of Palm Beach v. Gradison, supra. Such advisory committees, when possessed of sufficient authority, themselves rise to the status of a `board or commission' subject to the Sunshine Law. See Tolar v. School Board of Liberty County, Case No. 55,623 (Fla., filed March 26, 1981). The significance of this last fact becomes very relevant when dealing with agencies, such as yours, which are under the direction of a single individual. Obviously, an individual vested with decision-making power is not subject to the Sunshine Law since he is not a `board or commission.' However, a recent case decided by the Third District Court of Appeal in which this office participated held that an advisory board consisting predominately of lay citizens appointed by a city manager to assist him in screening applications and making a decision as to whom he should appoint as chief of police was a `board or commission' subject to the dictates of the Sunshine Law. See Krause v. Reno, *3580 366 So.2d 1244 (3 D.C.A. Fla., 1979). In that case the court recognized that an individual could be an `agency' for purposes of the Sunshine Law and that an advisory committee consisting predominately of lay citizens appointed by him to participate in the decision-making process could be subject to the law's public meeting requirements.
While the Krause decision is important and its holding should be understood and complied with, I do not feel that it is controlling in the instant situation. In Krause the city charter vested the city manager with the power to select and appoint a chief of police. He in turn appointed a special committee consisting of 1 city employee and 4 private citizens to meet together and jointly screen applications, conduct interviews, evaluate candidates, and recommend 4 or 5 from which he would select one for appointment. In holding that these committee meetings must be held in the sunshine, the court first ruled that this advisory committee was a `board' within the meaning of the Sunshine Law. An officially designated advisory committee consisting predominately of lay citizens appointed to participate in such an important decision-making process as the appointment of a chief of police is just not the same as an informally designated group of staff employees who meet in conjunction with performing their official duties. Neither Krause nor any other case of which I am aware has ever held that the Sunshine Law is applicable to meetings of staff. Cf. Occidental Chemical Co. v. Mayo, 351 So.2d 336, 341
(Fla. 1977), in which the supreme court stated that `we reject Occidental's broad-brush argument that all meetings between [members of the Public Service Commission] and their staff must be open to the public. The Commission's staff is not subject to the law' with Blackford v. School Board of Orange County,375 So.2d 578 (5 D.C.A. Fla., 1979), wherein the court held that the use of staff as intermediaries by board members in order to avoid face-to-face public meetings was inconsistent with the requirements of the Sunshine Law. On the other hand, neither the statute nor the courts have ever explicitly defined what constitutes a `board or commission' for purposes of the Sunshine Law, and it is certainly possible that, given the right set of circumstances, a situation may arise where a court will conclude that a committee consisting entirely of staff has achieved the status of a `board or commission' so as to bring itself within the parameters of the Sunshine Law. In the absence of such judicial ground breaking, however, I am reluctant to reach such a conclusion, especially where, as here, the subject of the meetings is so closely related to the official duties of the employees involved. To say otherwise would lead to the absurd result that nearly every meeting of 2 or more government employees at which some foreseeable agency action is discussed would be open to the public and could only be held after complying with the Sunshine Law's notice requirements. Such requirements would cripple the efficient operation of government and bring the conduct of the public's business to a virtual standstill. I cannot believe that the Sunshine Law was meant to cover such meetings. As the court stated in the case of Bennett v. Warden, 333 So.2d 97, 99 (2 D.C.A. Fla., 1976).
 frequent and unpublicized meetings between an executive officer and advisors, consultants, staff or personnel under his direction, for the purpose of `fact-finding' to assist him in the execution of those duties, are not meetings within the contemplation of the Sunshine Law. Any other conclusion, carried to its logical extension, would in our view unduly hamper the efficient operation of modern government the administration of which is more and more being placed in the hands of professional administrators. It would be unrealistic, indeed intolerable, to require of such professionals that every meeting, every contact, and every discussion with anyone from whom they would seek counsel or consultation to assist in acquiring the necessary information, data or intelligence needed to advise or guide the authority by whom they are employed, be a public meeting within the disciplines of the Sunshine Law. Neither the letter nor the spirit of the law require it.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General