## WOOD v. MARSTON
### No. 80-825-CA D
Circuit Court, Alachua County
July 24, 1981

Sandra Bieber, Larry Turner, for plaintiffs.

Thomas S. Biggs, Jr., for defendants.

Florence Beth Snyder, amicus curiae, for Palm Beach Newspapers.

Frank Vickory, Assistant Attorney General, amicus curiae.

BENJAMIN M. TENCH, Circuit Judge.

This action was tried before the Court upon the Second Amended Complaint for Permanent Injunction and Declaratory Judgment of the Plaintiffs and the Defendants' Answer to Plaintiffs' Amended Complaint for Temporary and Permanent Injunction.

Circuit Judge R. A. Green, Jr., entered an Order April 2, 1980, enjoining Defendants from holding closed meetings of the Dean Search and Screen Committee of the University of Florida College of Law during the pendancy of this litigation. The First District Court of Appeal affirmed that Order January 14, 1981. 394 So.2d 1157. The Attorney General of Florida and a contigency of Florida newspapers

and newspaper associations[1] filed amicus curiae memoranda of law in support of the position of the Plaintiffs.

Plaintiffs Terri Wood and Thomas R. Julin are citizens of the State of Florida and Plaintiff Campus Communications, Inc. is a Florida Corporation. Defendant Robert Q. Marston is President of the University of Florida and Defendant Fletcher Baldwin is a Professor of Law at the University of Florida College of Law.

In January of 1980 Joseph R. Julin announced that he would resign as Dean of the College of Law effective on March of 1980. Immediately following the January, 1980 announcement, Robert Bryan, University of Florida Vice President for Academic Affairs, acting for Defendant Marston who has authority to appoint, remove and reassign academic deans, advised the faculty of the College of Law to elect a committee to carry out the search and screen activities directed toward the selection and appointment of a new Dean, in accordance with a policy established by the University of Florida Constitution.

It is a common practice at the University of Florida for the President to use search and screen committees, composed of faculty members, to assist him in appointing deans and other personnel. Defendant Marston never has appointed a dean whose name was not among those recommended to him by a search committee. Pursuant to the advice of Dr. Bryan, the faculty of the College of Law, on January 15, 1980, elected seven faculty members to serve as voting members of the Dean Search and Screen Committee. Defendant Baldwin was elected to chair the committee. Two students at the College of Law were appointed by the faculty to serve as non-voting members of the Committee. Subsequently, Defendant Marston appointed Chesterfield Smith, Esquire, a distinguished member of the Bar and representative of the Law School Alumni Association, to serve as a voting member of the Committee.

The Committee conducted a nationwide search, sending out at least 150 letters soliciting applicants. By March of 1980, approximately 40 applications had been received. The applications received were divided into primary and non-primary classifications. Those designated by the Committee as non-primary received no further consideration. After debating and evaluating the qualifications of each primary applicant,

---

[1]Palm Beach Newspapers, Inc., The Florida Society of Newspaper Editors, The Miami Herald Publishing Co., Cape Publications, Inc., Gore Newspapers, News-Press Publishing Co., The Orlando Sentinel-Star Co., Pensacola News-Journal, Inc., and The Tribune Company jointly filed one memorandum of law in support of the position advocated by the Plaintiffs in this cause of action.

the Committee narrowed the list of candidates to six and recommended them to the faculty in August of 1980. The faculty declined to recommend any of the candidates to the President, and asked the Committee to resume its search.

The Committee conducted a second nationwide search following a procedure similar to that followed in the first search and in January of 1981, recommended five more applicants to the faculty. One of the recommended candidates withdrew before the faculty could consider him. The faculty then forwarded the remaining four names to the President along with the name of another candidate who had been on the Search Committee's "primary" list. In March of 1981, President Marston named Frank "T". Read as the next Dean of the University of Florida College of Law. He is one of the candidates who was recommended by the Committee.

Throughout its search the Committee held regularly scheduled meetings of which it kept records. In accordance with the temporary injunction ordered by Judge Green, the Committee opened its meetings to the public. Expense money for the Committee was supplied by the University of Florida. The Defendants' intent to prohibit public attendance of those meetings of the Committee during which applicants would be evaluated, but for the issuance of the temporary injunction, is evidenced by a long-standing, written policy of the University which requires all Search and Screen Committees to follow this "closed" meetings procedure. The Search and Screen Committee announced that the Committee would abide by that policy. Defendant Marston has continued to utilize this long-standing policy of the University in respect to all other Search and Screen Committees. The validity of this policy, in light of Section 286.011, Florida Statues, is a matter in controversy in this cause of action to the extent that the College of Law Dean Search and Screen Committee abided by said policy.

This Court adopts, as part of its findings of facts, the Stipulation entered into by the parties and filed in the record of this cause of action.

The parties have submitted for this Court's determination the question of whether the Government in The Sunshine Law, Section 286.011, Florida Statutes, applies to the Dean Search and Screen Committee of the University of Florida College of Law.[2] The Sunshine Law provides, in relevant part, that: "All meetings of a board or commission . . . of

---

[2]The Court has jurisdiction pursuant to Article V, Section 5 (b) of the Florida Constitution and Sections 286.011 and 86.011, Florida Statutes.

any state agency . . . at which official acts are to be taken are declared to be public meetings open to the public at all times." Section 286.011(1), Florida Statutes.

The Sunshine Law was introduced, debated, and failed to achieve the consensus required for its passage at every regular session of the Legislature from 1957 until the year of its adoption in 1967. Whether the public has a right to know why public employees are hired or fired by governmental agencies was an issue which divided the Senate and the House during the last legislative debates before the Bill became law.[3] And it has remained an issue hotly contested in the Courts and the writings of commentators ever since.[4]

Plaintiffs argue that the public has a right to know the deliberations of governmental agencies which precede their announcement of a final decision, even if that decision is advisory in nature. The Defendants argue that opening all meetings of the Dean Search and Screen Committee to any interested member of the public or press goes too far—to the point of adversely affecting the public interest in the selection of a qualified Dean. Defendants assert that a Sunshine-bright selection process could damage the reputations or jeopardize the careers of applicants, inhibit candid discussion of the applicants' qualifications, discourage Committee members from voting their conscience and result in news stories which sensationalize or misreport the Committee's deliberations.

Striking away the chaff, the question here is whether the right of the public to know outweighs the advantages gained by secret deliberations. This Court holds that it does. The legislative history of the Sunshine Law shows that in 1967, the Legislature struck the balance in favor of open meetings for the transaction or personnel business, and such

---

[3]*Fla. S. Jour.* 679 (June 1967): *Fla. H. R. Jour.* 958-59 (June 1967).

[4]*See. e.g., Board of Public Instruction v. Doran,* 224 So.2d 693 (Fla. 1969): *Tolar v. School Board of Liberty Co.,* #55,623 (Fla. March 26, 1981). The Courts consistently have affirmed the Legislature's decision to include personnel matters within the scope of the Sunshine Law. *Id.; see, also, Note, Government In The Sunshine Law: Promise of Placebo,* 23 U. Fla, L.R. 361 (1971); *Kelil, Florida Sunshine Law: Is Florida Sunshine the Most Powerful of Disinfectants?,* 49 Fla, Bar J. 72 (1975).

business foreseeably included the process of hiring a new Dean of the College of Law.[5]

The record makes clear the chilling effect of the Sunshine Law on the Search and Screen Committee when forced to act in public; some members of the Committee changed their votes, for entirely human and understandable reasons with which this Court has considerable sympathy. The members of the Search and Screen Committee—and through them, the faculty of the College of Law—have been sunburned by the Sunshine, but theirs is not a special class to which a special balm may be applied, *See, e.g., Board of Public Instruction v. Doran,* 224 So.2d 692 (Fla. 1969); *Town of Palm Beach v. Gradison,* 296 So.2d 473 (Fla. 1974); *Times Publishing Co. v. Williams,* 222 So.2d 470 (Fla.2d DCA 1969); *Hough v. Stembridge,* 278 So.2d 288 (Fla. 3rd DCA 1973): *Krause v. Reno,* 366 So.2d 1244 (Fla. 3rd DCA 1979).

The Legislature intended that Sunshine fall upon the high and the low, the rich and the poor, the learned and the unschooled, and each is subject to being burned without regard to whether, or how badly, it smarts. This Court is constitutionally constrained from rendering first aid by creating an exception to the Sunshine Law for the Defendant's Committee.[6] Such a remedy lies solely within the province of the Legislature. It is to that body of lawmakers that the University must address its appeal. *City of Miami Beach v. Berns,* 245 So.2d 38 (Fla. 1971) (unless the Legislature amends the Sunshine Law, it should be construed as containing no exceptions); *Canney v. Board of Public Instruction of Alachua County,* 278 So.2d 260 (Fla. 1973) (if the agency feels aggrieved, the remedy lies in the halls of the Legislature); *Turner v. Wainwright,* 379 So.2d 148 (Fla. 1st DCA 1980).

The Court may disagree with the wisdom of the legislative act, but the Legislature had the right to take such action and the Court has no

---

[5]The House adopted an amendment to the proposed Sunshine Law, providing that: "This act shall not apply to hearings involving individuals charged with violation of law or regulations respecting employment." The Senate rejected the amendment. *Fla. S. Jour.* 679 (June 1967); *Fla. H.R. Jour.* 958-59 (June 1967). In addition, during testimony before House committees, it was revealed that the hiring practices of at least one state agency sometimes resulted in placing convicted felons, known drug addicts or otherwise unqualified applicants on the public payroll, and amendment was sought to spare the agency the embarrassment of public disclosure. 23 *U. Fla. L.R., supra* note 6 at 362 (interview with J. Emory Cross). Certainly, the impact of the Sunshine Law on the individuals involved in such disciplinary hearings, including the decision-makers, would be much more painful than the impact of the law on a Committee dealing solely with outstanding candidates for Dean.

[6]Article II, Section 3, Florida Constitution.

right to invade the orbit of legislative authority. Even though the publishing of the deliberations of the Search and Screen Committee was embarrassing to its members, where we are dealing with the appointment of a public official, paid with public funds, to dispense legislative appropriations and administer an influential subdivision of a public educational institution, the Committee's right to privacy falls before the public's right to know. To paraphrase a discipline other than the law, the hiring of a dean for a public educational institution should be an open covenant, openly arrived at.

Thus, the Court finds that the Search and Screen Committee, constituted under a charge from the University President to perform the function of making a nationwide search for applicants and to exercise judgment in rejecting all but a select few candidates to recommend for the position of Dean at the College of Law, is a board or commission of a state agency which holds meetings at which official acts are taken within the scope of the Sunshine Law. *See Town of Palm Beach v. Gradison,* 296 So.2d 473 (Fla. 1974) (holding a citizens' planning board established by the town council was subject to the Sunshine Law); *Krause v. Reno,* 366 So.2d 1244 (Fla. 3d DCA 1979) (holding an advisory search and screen committee established by the city manager was subject to the Sunshine Law). This conclusion is consistent with the guidance offered by Mr. Justice Adkins that "The principle to be followed is very simple: When in doubt, the members of any board, agency, authority or commission should follow the open-meeting policy of the State." 296 So.2d at 477. It is accordingly,

ORDERED, ADJUDGED AND DECLARED that:

1. Any meeting of the University of Florida College of Law Dean Search and Screen Committee wherein public business is discussed, contemplated or transacted, or at which official acts are to be taken, is open at all times to the public and subject to all requirements of the Government in The Sunshine Law, Section 286.011, Florida Statutes.

2. Defendants Robert Q. Marston and Fletcher Baldwin, are permanently enjoined and restrained from holding, conducting or participating in any meeting of the University of Florida College of Law Dean Search and Screen Committee wherein public business is discussed, contemplated or transacted, or at which official acts are to be taken, unless such meeting is announced and conducted in compliance with the requirements of the Government In The Sunshine Law, Section 286.011, Florida Statutes.

3. Defendants and the members of the University of Florida College of Law Dean Search and Screen Committee, and any replacements or

substitutions elected or appointed in addition to or in substitution of any or either of them, are declared to be subject to the Government In The Sunshine Law, Section 286.011, Florida Statutes, and are permanently enjoined and restrained from holding, conducting or participating in any meeting of the University of Florida College of Law Dean Search and Screen Committee at which public business is discussed or contemplated or transacted, or at which official acts are to be taken, unless such meeting is announced and conducted in compliance with the requirements of the Government In The Sunshine Law, Section 286.011, Florida Statutes.

4. Jurisdiction of this cause of action of the parties hereto is reserved for the purposes of enforcing this Order, and of resolving the issues raised by Plaintiffs' prayer for attorneys fees and costs.