Richard S. Webb, IV Attorney for the Board of Trustees of The John and Mable Ringling Museum of Art
QUESTION:
1. Is The John and Mable Ringling Museum of Art Foundation, Inc. (foundation), a not-for-profit Florida corporation operating as the direct-support organization for The John and Mable Ringling Museum of Art (museum) under annual contract, a "state agency" as defined in Part I, Ch. 287, F.S., when expending funds obtained from:
 a) admissions, rental fees and other income from the museum and its programs, or b) fund raising activities, grants and private donations?
 2. Is the foundation subject to Ch. 119, F.S., and if so, does the law apply to records relating to the foundation's discharge of its duties to raise funds, hold property, and make expenditures to or for the benefit of the museum?
 3. Is the foundation subject to s. 286.011, F.S., and if so, does the law apply to meetings relating to the foundation's discharge of its duties to raise funds, hold property, and make expenditures to or for the benefit of the museum?
4. Is the advisory council established pursuant to s. 265.26(8), F.S., subject to Ch. 119 or s. 286.011, F.S., in the discharge of its duties to "advise and assist" the board of trustees of the museum and its direct-support organization?
SUMMARY:
1. The John and Mable Ringling Museum of Art Foundation, Inc., a not-for-profit Florida corporation operating as the direct-support organization for The John and Mable Ringling Museum of Art under annual contract, is not a "state agency" as defined in Part I, Ch.287, F.S. However, because the board of trustees of the museum rather than the foundation is expressly required to hold the admission fees, rentals and other income from the museum and its programs, such funds must be expended in accordance with the provisions of Ch. 287, F.S., in the absence of a specific statutory exemption. Funds other than those specified above which are held by the foundation would not appear to be subject to the requirements of Ch. 287, F.S.
2. The foundation, as a private agency acting on behalf of a public agency, is subject to Ch. 119, F.S.; thus, the records relating to the foundation's discharge of its duties to raise funds, hold property, and make expenditures to or for the benefit of the museum are subject to disclosure in the absence of a specific statutory exemption.
3. The foundation is subject to the Government in the Sunshine Law, and thus, meetings relating to the foundation's discharge of its duties to raise funds, hold property, and make expenditures to or for the benefit of the museum must comply with the requirements of s. 286.011, F.S.
4. The advisory council established pursuant to s. 265.26(8), F.S., by the board of trustees of the museum to advise and assist the board and its foundation in seeking nonstate funds is subject to Ch. 119 and s. 286.011, F.S., in the discharge of its duties.
The John and Mable Ringling Museum of Art (museum) is statutorily designated as the official art museum of the State of Florida.[1]
The purpose of the museum is to maintain and preserve all objects of art and artifacts donated to the state through the will of John Ringling; to acquire and preserve objects of art or artifacts of historical or cultural significance; to exhibit such objects to the public; to undertake scholarly research and publication relating to the collection; to provide educational programs for children and adults; to assist other museums in the state and nation through educational programs and through loaning objects from the collection . . . and to engage in such other activities related to visual arts which shall benefit the citizens of this state.[2]
An eleven member board of trustees (board), which serves as the governing body of the museum, is responsible for maintaining and preserving the collection as well as that of the Circus Museum and the Ringling home.[3] The board is statutorily authorized to approve a direct-support organization to operate for the benefit of the museum and its programs pursuant to written contract.[4] Such contract, however, must provide for:
1. Approval of the articles of incorporation of the direct-support organization by the board and the governance of the direct-support organization by members appointed by the board. 2. Submission of an annual budget for the approval of the board. The budget must be in accordance with rules adopted by the board. 3. Certification by the board, after conducting an annual financial and performance review, that the direct-support organization is operating incompliance with the terms of the contract and in a manner consistent with the goals and purposes of the board and in the best interest of the state. Such certification shall be made annually and reported in the official minutes of a meeting of the board. 4. All property held by the direct-support organization, except for that used by the direct-support organization to conduct its business and funds invested, becoming property of the State of Florida within 3 years after receipt by the direct-support organization, unless transferred sooner, and for the reversion to the board of funds and property held in trust by the direct-support organization if the direct-support organization is dissolved or is no longer approved to operate on behalf of the board.[5]
The John and Mable Ringling Museum of Art Foundation, Inc. (foundation), was incorporated in 1978. Its Articles of Incorporation provide that the nature of the corporation is to provide charitable and educational aid to the museum and to those persons, institutions or programs associated with the museum and to promote the aims and welfare of the museum and its activities.[6]
AS TO QUESTION 1:
Part I of Ch. 287, F.S., relates to the procurement of commodities, insurance and contractual services by state agencies. "Agency" is defined for purposes of this part to mean:
[A]ny of the various state officers, departments, boards, commissions, divisions, bureaus, and councils and any other unit of organization, however designated, of the executive branch of state government.[7]
The board is assigned to the Department of State in the executive branch of state government and, therefore, would appear to be a state agency subject to Ch. 287, F.S.[8] While the board is authorized to contract with the foundation, the foundation is a not-for-profit corporation established to assist in fund-raising, promotional and other activities for the benefit of a state agency. The foundation would not, therefore, generally appear to be a state agency as that term is defined in s. 287.012(1), F.S.[9]
Your inquiry, however, concerns the expenditure of the admissions fees, rentals and other income as well as other funds collected by the foundation. Prior to 1982, monies derived from the museum were collected by the board and deposited into the state treasury and then appropriated to the museum. In 1982, the board was authorized to enter into a contract with a direct-support organization to operate and maintain the museum. The organization was authorized to collect all admission and rental fees and other income from the museum. These funds were collected and expended by the foundation in accordance with the budget approved by the board for the operation and maintenance of the museum.[10]
In 1988, however, Ch. 88-255, Laws of Florida, was passed to distinguish between funds received from all admissions and rentals and other funds. Section 265.26(4), F.S., was amended to provide that funds received from all admissions and rentals were to be held in trust by the board, subject to the reversion clauses in the trust agreement, "and may be used in accordance with a contract or agreement with the board of trustees." Any other funds and other income from the museum and its programs were authorized to be held in a separate trust fund by the direct-support organization. The income from such funds held by the organization, upon approval by the board, could be used for supplemental salaries and personnel not provided for by the General Revenue Fund.
Chapter 88-255, Laws of Florida, also deleted the language in s. 265.26, F.S., authorizing the board to enter into an agreement with a direct support organization to operate and maintain the museum.
During the 1990 legislative sundown review of the museum, s. 265.26, F.S., was amended to provide that the board may approve a direct-support organization to operate for the benefit of the museum and its programs.[11] At that time, the Legislature sought to more clearly define the roles of the board and the foundation which had been described as "virtually inseparable."[12] Subparagraphs (6)(b) and (6)(c) were amended to provide:
(b) Funds received from all admissions and rentals and other income from the museum and its programs shall be held in trust by the board of trustees.
(c) Any other funds, except those enumerated in paragraph (b) may be held in a separate trust fund by the direct-support organization and shall be subject to provisions of the contract with the board of trustees. Such funds may include membership fees, private donations, income derived from fund-raising activities, and grants applied for and received by the direct-support organization.
Thus, funds from admissions, rentals and other museum income are required to be held by the board; funds other than those enumerated above, may be held by the foundation pursuant to its contract with the board.
In light of the above, there would appear to be a substantial question whether the foundation is authorized to expend the funds derived from admissions, rentals and other income of the museum. To the extent, however, that the board may lawfully delegate such function, the foundation would be acting for the board and would, therefore, be subject to those statutory pro-visions applicable to the board regarding the expenditure of money. Thus, the expenditure of funds derived from admissions fees, rentals and other income of the museum and its programs are subject to the provisions of Ch. 287, F.S., in the absence of a specific exemption. Funds other than those specified above, which are held by the foundation would not appear to be subject to the provisions of that chapter.[13]
AS TO QUESTION 2:
Chapter 119, F.S., the Public Records Law, requires that records made or received in connection with the transaction of official business by an agency, as defined within the act, must be open for inspection in the absence of a statute exempting the record or making it confidential.[14] "Agency" is expressly defined to include private corporations acting on behalf of a public agency.[15]
In News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc.,[16] The Supreme Court of Florida adopted the totality of factors test which had been utilized by several district courts in determining whether a private entity was subject to Ch. 119, F.S. The Schwab Court set forth a list of factors to be considered in making such a determination:
1) Creation — did the public agency play apart in the creation of the private entity?
2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity?
3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment?
4) Decision-making process — does the private entity play an integral part in the public agency's decision-making process?
5) Governmental function — is the private entity exercising a governmental function?
6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?
In developing the test, the Court relied on several earlier decisions, including that of the Second District Court of Appeal in Sarasota Herald-Tribune Company v. Community Health Corporation, Inc.[17] In that case, the district court held that a not-for-profit corporation created and funded by the public hospital district to operate as a side by side corporation to enhance the services provided by the public hospital was an "agency" subject to Ch. 119, F.S.
In reaching this conclusion, the district court relied on a number of factors relating to the creation and existence of the corporation, its funding and capitalization, its goals and purpose, its ownership and interdependence. The side by side corporation was created for the purpose of assisting the hospital in carrying out its functions. Several members of the public hospital's board served on the corporation's governing board and, thus, could substantially influence the policy financial decisions of the corporation. If the corporation was dissolved, its assets were to be transferred either to a public hospital or to a charitable corporation created to assist the hospital district. The corporation operated on land lease by the hospital and received substantial grants from the hospital board.
With respect to the instant inquiry, the foundation was created solely to enhance the museum. It operates for the benefit of the museum and its programs. The foundation must be approved by the board as well as its annual budget. Certain property of the foundation reverts to the state after three years while all funds and property held in trust by the foundation revert to the museum if the foundation is dissolved or no longer approved by the museum. Members of the foundation's board of directors are named by the board, and, in fact, this office has been advised that the board of trustees have for a number of years served as the foundation's board of directors.[18] Many of the foundation's activities are conducted on publicly owned property.
Moreover, s. 265.26(7)(b), F.S., provides for a limited exemption from the provisions of Ch. 119, F.S., for the identity of donors who desire to remain anonymous.[19] Prior to its amendment in 1989, the statute exempted all records of the direct-support organization, with the exception of the annual auditor's report and supplemental data requested by the Auditor General or the trustees provided that the identity of donors who desired to remain anonymous was maintained in the auditor's report. In 1989, the exemption for the direct-support organization was amended to limit the exemption only to those donors who wished to remain anonymous. The staff analysis considering the possible amendment to the exemption clearly indicates that the records of the direct-support organization, absent an exemption, are subject to disclosure under Ch. 119, F.S.[20]
Therefore, I am of the opinion that the foundation is an "agency" for purposes of Ch. 119, F.S., and, thus, subject to the requirements of that law.[21] Accordingly, the records of the foundation are subject to disclosure unless expressly exempted or made confidential by statute.
AS TO QUESTION 3:
Section 286.011(1), F.S., the Government in the Sunshine Law, provides in pertinent part:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times . . . .
In interpreting the Sunshine Law, the courts have stated that the law should be liberally construed to give effect to its public purpose.[22] Moreover, both the courts and this office have advised officials that if they are in doubt as to the applicability of the law, they should comply with the open-meeting policy of the state.[23]
While private organizations generally are not subject to the Sunshine Law, s. 286.011, F.S., has been held applicable to private organizations in order to avoid a circumvention of the statute. In determining whether a private organization is subject to the Sunshine Law, this office has generally reviewed all the factors relating to the responsibilities of the private entity and its relationship with the public agency. Based upon such a review, this office advised a direct-support organization created pursuant to statute for the purpose of assisting a district school board in carrying out the educational needs of its students, which was authorized to use district property, whose board of directors consisted of several school officials, whose principal place of business was the school board offices, and whose agent was the school board attorney, to meet in the Sunshine.[24]
The John and Mable Ringling Museum of Art Foundation, Inc., was created pursuant to statute. Although it constitutes a not-for-profit corporation, its purpose is to assist the museum in carrying out its functions by raising funds for the museum. Towards that end, the foundation is authorized to use museum property. As concluded in Question Two, its records are open for public inspection with the limited exception for information identifying donors or prospective donors who request anonymity.[25]
In addition, the board of directors of the foundation are the same individuals who serve as the trustees for the museum. Under the Articles of Incorporation for the foundation, its offices are located at the museum and that meetings for the board and the board of directors are usually held at the same time. The ties between the foundation and museum are, thus, substantial.
Accordingly, in light of the above and in keeping with the courts' directive that the Sunshine Law is to be liberally construed, it is my opinion that the meetings of the foundation are subject to the provisions of s. 286.011, F.S.
AS TO QUESTION 4:
Section 265.26(8), F.S., provides for the creation of an advisory council consisting of at least five members but not more than nine members appointed by the board, to advise and assist the board or the direct-support organization to develop nonstate support. The board is responsible for setting policies regarding the operation and organization of the council. You ask whether the advisory council is subject to the Government in the Sunshine Law and the Public Records Law.
The courts and this office have recognized that publicly created advisory boards whose powers are limited only to making recommendations and which possess no authority in any way to bind an agency are subject to s. 286.011, F.S.[26] Similarly, this office has concluded that the records of an advisory board established by a governmental entity to provide advice or make recommendations to that governmental agency are public records.[27]
You state that inasmuch as the council's role is limited to that of advising the board and foundation on nonstate support, such activities relate to a private rather than a public function.[28]
However, the statute creates the council as an advisory council to a public body. Moreover, in light of this office's response to Questions Two and Three that the foundation is subject to both the Public Records Law and the Sunshine Law, the requirements of those statutes would appear to be equally applicable to the advisory council established to advise and assist the foundation in carrying out its function to raise funds for the museum.
Accordingly, I am of the opinion that the advisory council created pursuant to statute by the board of trustees of the museum to advise and assist the board and the foundation is subject to Ch. 119 and s. 286.011, F.S.
RAB/tjw
[1] Section 265.26(2)(a), F.S.
[2] Section 265.25(2)(a), F.S.
[3] Section 265.26(2)(b), F.S.
[4] Section 265.26(6)(a), F.S.
[5] Section 265.26(6)(a), F.S. And see, s. 265.261, F.S., which states that the "John and Mable Ringling Museum of Art direct-support organization" is an organization which:
(a) Is a corporation not for profit incorporated under the provisions of chapter 617 and approved by the Department of State; (b) Is organized and operated exclusively to raise funds; to submit requests and receive grants from the Federal Government, the state, private foundations, and individuals; to receive, hold, invest, and administer property; and to make expenditures to or for the benefit of the John and Mable Ringling Museum of Art; (c) Has been determined by the Board of Trustees of the John and Mable Ringling Museum of Art to be operating in a manner consistent with the goals of the John and Mable Ringling Museum of Art and in the best interests of the state. Such determination shall be made once a year and reported in the official minutes of a meeting of the board of trustees; and (d) Has been approved by the Board of Trustees of the John and Mable Ringling Museum of Art for operation on the property of, or for the benefit of, the John and Mable Ringling Museum of Art. . . .
[6] See, Art. II, p. 1, Articles of Incorporation.
[7] Section 287.012(1), F.S.
[8] See, s. 265.26(4), F.S. Section 265.26, F.S., however, recognizes an exemption from the competitive bidding requirements of s. 287.057, F.S., for the restoration or purchase of art objects as well as the surplus property provisions of Ch.273, F.S., for the sale or trade of any object of art which has been acquired since 1936. See, s. 265.26(11), F.S., providing that notwithstanding the provisions of s. 287.025(1)(e), F.S., the trustees may enter into contracts to insure paintings and other objects of art; and s. 265.26(13), F.S., providing that the provisions of s. 287.057, F.S., to the contrary notwithstanding, the trustees may enter into contracts for the restoration of objects of art within the museum collection or which are to be added to the collection. And see, s. 265.26(14)(a), F.S., providing an exception to s. 273.055, F.S., when the trustees sell any art object in the museum collection acquired after 1936.
[9] Cf., Final Staff Analysis and Economic Impact Statement on House Bill 818, House of Representatives Committee on Governmental Operations, dated June 19, 1989, which in discussing the nature of direct-support organizations, including the direct-support organization for the museum, stated:
Because of the use of state property, facilities, state personnel, and, in some cases, appropriated funds, DSO's [direct-support organizations] are quasi-judicial in nature. However, they are not subject to the laws and regulations governing state agencies.
[10] Chapter 82-73, Laws of Florida.
[11] See, s. 1, Ch. 90-114, Laws of Florida.
[12] See, A Review Of The Board Of Trustees Of The John and Mable Ringling Museum Of Art And Its Authority To Approve A Direct-Support Organization Pursuant to Section 11.611, Florida Statutes, The Sundown Act, Florida Senate Committee on Governmental Operations, December 1989, stating at page 5:
The board of trustees appointed itself as the board of directors of the foundation, and has essentially managed the museum in this dual capacity ever since. The activities of the board of trustees and the foundation are thus virtually inseparable. The board has received all of its operating revenues and made expenditures in its role as a private foundation. As a result, the expenditures for the operations and programs of the museum have not been subject to state laws and regulations governing the expenditure of public funds . . . .
The report recommends that the relationship between the foundation and the trustees be clarified and the activities of the trustees be distinguished from those of the foundation. With such modifications, the report states:
The operating expenditures derived from admission and rental fees for access to the public facility, and other income from the museum and its programs, would essentially be subject to the state procedures and regulations required of state agencies generally. . . . Moreover, funds of the direct-support organization, which would be statutorilyenumerated, would continue to be exempt from the provisions that govern state funds.
Id. at 11. And see, Staff Analysis and Economic Impact Statement, CS/SB 306, Florida Senate, dated May 17, 1990.
[13] Id.
[14] "Public records" is defined in s. 119.011(1), F.S.See, Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633 (Fla. 1980).
[15] Section 119.011(2), F.S.
[16] 17 F.L.W. S156 (Fla., filed March 5, 1992).
[17] 582 So.2d 730 (2 D.C.A. Fla., 1991).
[18] See, Sundown Report, supra, prepared by the Senate Committee on Governmental Operations, and the Staff Analysis and Economic Impact Statement on CS/SB 306, supra, recognizing that the activities of the trustees and the foundation are "virtually inseparable."
[19] Section 2, Ch. 92-77, Laws of Florida, effective October 1, 1992, amends s. 265.26(7)(b) to provide in part:
Information which, if released, would identify donors who desire to remain anonymous is confidential and exempt from the provisions of s. 119.07(1). Information which, if released, would identify prospective donors is confidential and exempt from the provisions of s. 119.07(1) when the direct-support organization has identified the prospective donor itself and has not obtained the name of the prospective donor by copying, purchasing, or borrowing names from another organization or source. Identities of such donors and prospective donors shall not be revealed in the auditor's report. These exemptions are subject to the Open Government Sunset Review Act in accordance with s. 119.14.
[20] See, Staff Analysis and Economic Impact Statement on Senate Bill 278, Senate Government Operations Committee, dated April 6, 1989, stating:
Certain entities within the Department of State have been authorized to approve private not-for-profit corporations to operate as either a direct-support organization, or a citizen support organization, for the benefit of and on the property of the designated entity. Because such organizations are private corporations acting on behalf of a state entity, the records of each of these organizations are subject to the provisions of the Public Records Law unless specifically exempted by law.
And see, Final Staff Analysis and Economic Impact Statement on House Bill 818, House of Representatives Committee on Governmental Operations, dated June 19, 1989, stating:
In addition, language has been removed from ss. 265.26(4)(h) . . . which made all records of these DSO's [direct-support organizations] exempt from the provisions of chapter 119. Therefore, all records from these DSO's will be open to the public, except that the identities of donors requesting anonymity shall remain confidential.
And see, Ellsworth v. Insurance Company of North America,508 So.2d 395 (1 D.C.A. Fla., 1987) (appellate courts may consider legislative staff summaries in construing statutes). Cf., 82 C.J.S. Statutes s. 356 (reports and explanatory statements of legislative committees in charge of a bill, while not binding, may be resorted to as indicative of the intent of the Legislature where the meaning of the statute is unclear or to ascertain the need for the enactment, the situation under earlier laws, and the proposed remedy of the new law).
[21] While you state that the foundation's primary function of fund-raising is not a governmental function which the museum may perform, I note that the March 1992 Position Specification for director of the museum states one of the responsibilities of the director is to "[t]ake an active role in fund development; maintain and cultivate relations with current and potential donors and funding sources [and to] . . . [c]ultivate gifts and bequests from collectors . . . ." Among the qualifications specified for the director are "[p]roven fund raising skills and a willingness to provide leadership to Board [of Trustees] members, staff and volunteers in fund raising efforts." The position specification concludes that the ideal candidate will, among other things, demonstrate the ability and experience to "[r]aise private, government and corporate/foundation money." Thus, it appears that the museum and boards consider fund-raising to be an important function of its director and one well within the ambit of museum's powers.
[22] See, e.g., Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969); Wood v. Marston, 442 So.2d 934 (Fla. 1983) (statute should be broadly construed to effect its remedial and protective purposes).
[23] See, e.g., Town of Palm Beach v. Gradison,296 So.2d 473, 477 (Fla. 1974) ("[t]he principle to be followed is very simple: When in doubt, the members of any board, agency, authority or commission should follow the open-meeting policy of the State.").
[24] Inf. Op. to Mr. Michael D. Chiumento, dated June 27, 1990.
[25] See, Wood v. Marston, 442 So.2d 934 (Fla. 1983), in which The Supreme Court of Florida recognized that the Public Records Law was analogous to the Sunshine Law and looked to Ch.119, F.S., to assist it in determining whether a state university was an agency subject to the Sunshine Law. And see, Krause v. Reno, 366 So.2d 1244 (3 D.C.A. Fla., 1979).
[26] See, e.g., Town of Palm Beach v. Gradison,296 So.2d 473 (Fla. 1974); Krause v. Reno, supra. And see, AGO 85-76 (advisory committee appointed by mayor for purpose of making recommendations concerning legislation subject to Sunshine Law).
[27] Inf. Op. to Paul J. Nicoletti, November 18, 1987 (council formed by eleven public agencies to study and make recommendations on local governmental issues was an agency for purposes of Ch. 119, F.S.).
[28] See, n. 21 supra.