DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TRANSPARENCY FOR FLORIDA, KALI CRUM** and
**NICHOLAS PLUMMER,**
Appellants,

v.

**CITY OF PORT ST. LUCIE, RON BOWEN, JOANN FAIELLA,
SHANNON MARTIN** and **ROGER ORR,**
Appellees.

No. 4D16-3976

[April 18, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; William L. Roby, Judge; L.T. Case No. 56-2013-CA-3295.

Megan Lazenby of Lazenby Law LLC, Lakeland, James S. Benjamin of Benjamin, Aaronson, Edinger & Patanzo, P.A., Fort Lauderdale, and Andrea Flynn Mogensen of The Law Office of Andrea Flynn Mogensen, P.A., Sarasota, for appellants.

Jeffrey A. Blaker of Conroy Simberg, West Palm Beach, and Diane H. Tutt of Conroy Simberg, Hollywood, for appellees City of Port St. Lucie, Ron Bowen, Shannon Martin and Roger Orr.

Cynthia G. Angelos of Cynthia G. Angelos, P.A., Port St. Lucie for appellee Joann Faiella.

David A. Wallace of Bentley & Bruning, P.A., Sarasota, for Amicus Curiae First Amendment Foundation.

WARNER, J.

Transparency for Florida, Inc., appeals a final summary judgment in favor of the City of Port St. Lucie, its council members, and city attorney in a Sunshine Law violation case regarding the termination of the city manager. The trial court did not conclude that a Sunshine Law violation had occurred, but determined that even if it did, any violation was cured by a noticed special meeting of the council. We reverse, as disputed issues of fact remain.

Appellant, Transparency for Florida, Inc., sued the City of Port St. Lucie, city council members (Ron Bowen, Shannon Martin), the mayor (Joann Faiella), and city attorney (Roger Orr) alleging that the council members violated the Sunshine Law in their discussions regarding the dismissal of the City Manager, Greg Oravec, and the negotiation of his severance agreement. It alleged that the city attorney improperly polled council members to determine their position on Oravec's separation agreement, and the city attorney communicated the polling results to other council members. After polling, the council held a special meeting to vote on the agreement, and the defendants provided the public with about twenty-one and one-half hours' notice. Transparency contended the notice was inadequate, and the subsequent meeting did not cure the violation. It sought a declaration that the Sunshine Law had been violated and the cure was inadequate. The defendants answered, contending that no Sunshine Violation had occurred, but if there was a violation, it was cured by the public meeting.

The defendants moved for summary judgment, attaching depositions and exhibits. The submissions showed that Port St. Lucie Councilman Bowen had significant disputes with City Manager Oravec, which ultimately culminated in Bowen's attempts to remove the city manager. To that end, in December 2012, an assistant city attorney told Oravec that the mayor asked to pull his employment contract and explore the severance provision because four out of five council members had lost confidence in him. Oravec wondered how this no confidence vote occurred outside of Sunshine. He questioned the mayor on this, and the mayor relayed that the council was unhappy with him. When questioned how she knew this without a meeting, the mayor became defensive.

On Super Bowl weekend in the beginning of February 2013, Bowen called City Attorney Orr, and asked Orr to determine whether there was interest in the council considering terminating Oravec. Bowen also spoke to the mayor that morning. Orr agreed to poll the council to determine whether there was any interest in offering Oravec a severance in exchange for his resignation. When Orr called Council Member Martin and asked her about her interest, she told him that she could not discuss this. Similarly, Council Member Berger told Orr that she would not participate in any polling, because a possible termination and severance should be discussed in the Sunshine. Orr called Bowen to report back his finding that there was not support to terminate Oravec. Orr had also called Oravec to suggest his resignation with a severance package, but Oravec turned him down.

After that weekend, Oravec had a change of heart and determined that he would negotiate an amicable separation agreement with the city because his relationship with the council was "irretrievably altered." Orr and Oravec then negotiated the terms of the separation agreement. When they got close, the council scheduled a special meeting to consider Oravec's departure.

There were three notices of the special meeting to consider Oravec's separation from the city. The first notice, with a hand-written "posted" date of February 06, 2013, states that there will be a special meeting for the removal of the city manager on February 07, 2013, at 9 a.m. at City Hall. This notice was posted twenty-one hours, twenty-seven minutes before the meeting. This notice was sent to the media. The second, revised notice lists the "discussion of a separation agreement for the city manager" on its agenda. This notice was posted to the city's public calendar on February 6 at 1:19 p.m. The notice also lists discussion of the "cancellation of the city manager's employment agreement" as an agenda item, only to be discussed if the separation agreement was not approved. The third notice lists the same date and time for the meeting, but it only lists discussion of a separation agreement.

The city attorney and his staff then worked on the separation agreement until late the night before the meeting. The assistant city attorney testified in deposition that she may have had conversations about the city manager's resignation with the individual council members. Prior to the meeting, the council members were e-mailed one version of the agreement. Then more changes were made, and on the morning before the special meeting, the assistant city attorney explained to the council members the changes and received comments from them. At least two council members expressed the desire to have no debate or discussion of the termination at the meeting because of an unpleasant experience with a prior termination of a city manager. They told the city attorney that they did not want to go "item by item to say we don't want you here because of A, B, C and for him to respond that's not true because of X, Y, and Z."

The meeting commenced at 9 a.m. A video of the meeting shows that many people attended, although nothing in the record indicates whether those attending were members of the public, city staff, or the media. The meeting was almost immediately recessed because the city attorney announced that more changes needed to be made to the separation agreement, because additional matters came up which needed to be dealt with. After about an hour, the meeting resumed at which time there was no discussion of the terms of the finalized agreement. A motion was made to approve the separation agreement. The council members had copies of

3

the agreement. Although the previous drafts of the agreement were available in the city records, there is no indication that a copy of the final agreement was made available to the public. Several of the council members made statements of regret to the termination, stating that they all had great respect for Oravec. Some mention was made of failure to communicate and failure to agree on several matters, but the council never discussed any specific issues. Mayor Faiella stated that Oravec had made tremendous progress in bringing the city to a new level. Neither the terms of the severance agreement or the reasons for termination were discussed. The meeting lasted less than fifteen minutes.

After accusations of Sunshine Law violations by the council members appeared in the newspaper, the State Attorney's Office (SAO) investigated the matter. During the course of the investigation, the SAO subpoenaed phone records from the city council members' city-issued phones. Some of the council members deleted text messages and voicemails on their phones from the time period about which the subpoenas inquired. As a result of the investigation, Councilman Bowen pled nolo contendere to the noncriminal infraction of violating the Sunshine Law.

The trial court granted the defendants' motion for summary judgment, based upon the materials submitted. In its order, the court stated that it was "not convinced that [the discussions regarding the termination of Oravec and the severance agreement] were purposeful contraventions of the Sunshine law," but concluded that any violations were cured by the well-attended special meeting. The court found that the matter of the city manager's employment and potential severance was discussed "at length." The court rejected Transparency's contention that the meeting could not cure a prior Sunshine Law violation unless the prior violation was specifically addressed. It believed that any violation could be "cured where the substantive subject matter is addressed via formal, independent, public action." As the court found that was what occurred at the February 7th meeting, the court concluded that any violation was cured. The court also rejected Transparency's contention that the notice was insufficient because it gave less than twenty-four hours' notice. While the statute requires reasonable notice of a meeting, the statute does not further define what that may be. From these rulings, Transparency appeals.

This Court reviews a trial court's grant of summary judgment de novo. *Soncoast Cmty. Church of Boca Raton, Inc. v. Travis Boating Ctr. of Fla., Inc.*, 981 So. 2d 654, 655 (Fla. 4th DCA 2008).

> [A] party moving for summary judgment must show conclusively the absence of any genuine issue of material fact,

4

and the court must draw every possible inference in favor of the party against whom a summary judgment is sought. A summary judgment should not be granted unless the facts are so crystalized that nothing remains but questions of law.

*Id.* (citing *Craven v. TRG-Boynton Beach, Ltd.*, 925 So. 2d 476, 479-80 (Fla. 4th DCA 2006)). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Article I, section 24(b), of the Florida Constitution provides:

All meetings of any collegial public body of the executive branch of state government . . . at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public . . . .

The Sunshine Law, section 286.011(1), Florida Statutes (2012), states:

All meetings of any board or commission of any state agency or authority . . . at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.

The law aims to prevent "[t]he evil of closed door operation of government without permitting public scrutiny and participation," and if any two or more public officials meet in secret to transact public business, they violate the Sunshine Law. *City of Miami Beach v. Berns*, 245 So. 2d 38, 41 (Fla. 1971). A Sunshine Law violation occurs when officials "discuss matters on which foreseeable action may be taken by that board or commission in clear violation of the purpose, intent, and spirit of the . . . Sunshine Law." *Hough v. Stembridge,* 278 So. 2d 288, 289 (Fla. 3d DCA 1973).

The Sunshine Law must be "construed so as to frustrate all evasive devices," and the law "protect[s] the public from 'closed door' politics . . . ." *Sarasota for Responsible Gov't v. City of Sarasota*, 48 So. 3d 755, 762 (Fla. 2010) (citations omitted). The "frustration of all evasive devices"

5

can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a government agency, and relates to any matter on which foreseeable action will be taken.

*Town of Palm Beach v. Gradison,* 296 So. 2d 473, 477 (Fla. 1974).

Because the law must be construed to "frustrate all evasive devices,"

the Sunshine Law is implicated when a person other than a board member is used as a liaison among board members. For example, a city manager may not ask each commissioner to state his or her position on a specific matter that will foreseeably be considered by the commission at a public meeting, in order to provide the information to the members of the commission.

Op. Att'y Gen. Fla. 96-35 (1996). For instance, in response to an inquiry, the Attorney General issued an opinion that a city manager can meet individually with city council members "to discuss city business provided that he does not act as a "liaison" for board members by circulating information and thoughts of individual councilmen to the rest of the board." Op. Att'y Gen. 75-59 (1975).

*Blackford v. Sch. Bd. of Orange County,* 375 So. 2d 578 (Fla 5th DCA 1979), presents a similar factual circumstance to this case where the series of phone conversations between the city attorney and the council members could constitute "de facto" meetings on the severance agreement. In *Blackford,* the school board superintendent "admitted that he wanted to avoid the uproar which would unquestionably attend the public airing" of the county's redistricting problem. *Id.* at 579. The superintendent, not subject to the Sunshine Law, devised a plan by which the school board members would visit his office, separately but in "rapid-fire succession" over a period of a few days, to discuss the county's redistricting problem. *Id.* at 580. The superintendent denied acting as a "go-between" or telling the school board members each other's opinions. *Id.* After the meetings, final proposed resolutions of the redistricting plan were made, and the resolutions were placed on the board's agenda. *Id.* The court found that the six separate meetings were "de facto meetings by two or more members of the board at which official action was taken." *Id.* The board used the superintendent as an intermediary to circumvent the public meeting requirements. *Id.* at 580-81.

In this case, while the city claims that all Orr did as city attorney was to poll the members as to whether they wanted to discuss the severance of Oravec, appellant contends that Orr acted as a liaison for council members to share their thoughts. The evidence presented does not conclusively refute those allegations. Indeed, much of it suggests that the details of the severance were discussed both in the phone calls during Super Bowl weekend of 2013, and leading up to the meeting at which the severance agreement was approved. The trial court correctly concluded that it could not definitively find that no Sunshine Law violation occurred.

Instead, the court determined that any violation was cured by the special meeting. Our supreme court has held that "Sunshine Law violations can be cured by 'independent, final action in the sunshine,' which [the supreme court] distinguished from mere ceremonial acceptance or perfunctory ratification of secret actions and decisions." *Sarasota Citizens for Responsible Gov't v. City of Sarasota*, 48 So. 3d 755, 765 (Fla. 2010) (quoting *Tolar v. School Bd. of Liberty Cty.*, 398 So. 2d 427, 429 (Fla. 1981)). In *Zorc v. City of Vero Beach*, 722 So. 2d 891, 903 (Fla. 4th DCA 1998), we explained "only a *full*, open hearing will cure a defect arising from a Sunshine Law violation. Such violation will not be cured by a perfunctory ratification of the action taken outside of the sunshine." The council members in *Zorc* had taken action at a private meeting, and when suit was filed for violation of the Sunshine Law, the council scheduled a meeting to reconsider their vote. *Id.* at 895, 903. At the subsequent meeting, the city attorney gave each council member a transcript of the prior meeting, but he said he would not review it at the open meeting. *Id.* at 903. The public was given an opportunity to speak, and the plaintiff, Zorc, spoke. *Id.* The council then voted to ratify the actions taken at the prior meeting. Finding that the subsequent meeting was insufficient to cure the Sunshine Law violation, our court said:

> It is evident from the record that the meeting was not a full reexamination of the issues, but rather, was merely the perfunctory acceptance of the City's prior decision. This was not a full, open public hearing convened for the purpose of enabling the public to express its views and participate in the decision-making process. Instead, this was merely a Council meeting which was then opened to the public for comment at the City's request. There was no significant discussion of the issues or a discourse as to the language sought to be included. The City Councilmen were provided with transcripts of the hearings, but none reviewed the language previously approved, and the Council subsequently voted to deny

reconsideration of the wording. Under *Tolar* and its progeny,
it is clear that the City did not effectively cure its violation of
the Sunshine Law emanating from the [prior] meeting.

*Id.* at 903-04. The court reversed a summary judgment in favor of the city.

The parties in this case stipulated that the tape of the council meeting, at which the separation agreement was discussed, is part of the summary judgment proceedings. It is clear that the trial court considered the video and the minutes of the meeting. We have been able to view it. We have an entirely different impression of the proceedings than the trial court's finding in its summary judgment that the city manager's employment and termination was discussed at length. The separation agreement was not discussed at all at the meeting. When the meeting was called to order, the city attorney asked for a recess to complete some changes to the agreement. Convening again an hour later, the council members each had a copy of the agreement. The mayor asked for a motion to approve, and several of the commissioners made statements of regret as to how they had come to parting ways with the city manager. No one mentioned the terms of the agreement, nor did they discuss at length the reasons for the termination. It was then unanimously accepted. The public was never invited to speak at the meeting. The entire proceeding lasted less than fifteen minutes. This meeting may be more perfunctory in approving the agreement than the meeting in *Zorc.* As we review this record de novo, we conclude that there are disputed issues of fact as to whether the meeting on the separation agreement cured any Sunshine Law violation which may have occurred prior to the meeting in the formation of the separation agreement and termination of the city manager.

Finally, appellants argue that less than twenty-four hours' notice for the meeting was unreasonable in the absence of a demonstrated urgency, and only twenty-one hours and twenty-seven minutes' notice was given. The city and mayor contend there is no bright-line rule for reasonable notice, and the notice was sufficient.

Section 286.011(1), Florida Statutes (2012), provides that "[t]he board or commission must provide reasonable notice of all such meetings." Several Florida Attorney General opinions have interpreted what constitutes sufficient notice under the statute. A 2000 Florida Attorney General opinion notes that "reasonable notice" has not been statutorily defined, and the type of notice that must be given for a meeting is variable and depends on the facts of the situation. Op. Att'y Gen. Fla. 2000-08 (2000). However, in a footnote, the opinion states that "special meetings

8

should have at least 24 hours reasonable notice to the public . . . ." *Id.* No citation of governing authority is referenced, however.

The Attorney General also publishes the Government-In-The-Sunshine Manual, Volume 39 (2017 Ed.), for use by public officials in navigating issues regarding the Sunshine Law. It provides suggested notice guidelines, such as:

> 3. Except in the case of emergency or special meetings, notice should be provided at least 7 days prior to the meeting. Emergency sessions should be afforded the most appropriate and effective notice under the circumstances.

> 4. Special meetings should have no less than 24 and preferably at least 72 hours reasonable notice to the public.

39 Government-in-the-Sunshine Manual, section (D)(4)(a)3., 4. (2017).

Few cases address the question of what is reasonable notice. In *Yarbrough v. Young*, 462 So. 2d 515 (Fla. 1st DCA 1985), three days' notice of a special meeting was deemed adequate. In *Rhea v. City of Gainesville*, 574 So. 2d 221, 221 (Fla. 1st DCA 1991), an hour and a half notice of a special meeting to respond to the county's appointment of a commission to study the operation of the regional utility authority was deemed unreasonable notice under the Sunshine Law. Florida Attorney General opinion 73-170 finds that the type of notice given depends on the purpose for the notice, the character of the event about which the notice is given, and the nature of the rights to be affected. Op. Att'y Gen. Fla. 73-170 (1973).

Where there is no specific legislative directive as to what constitutes reasonable notice as a matter of law, we agree with the Attorney General that it is a fact specific inquiry. In this case, the trial court properly found that no bright-line rule mandated a twenty-four hour notice period. However, it then required the plaintiff to allege and prove that some member of the public was not afforded an opportunity to attend the meeting because notice was not adequate. This is not an element of a cause of action for a Sunshine Law violation. The plaintiff alleged that less than twenty-four hours' notice of the meeting was provided, which was not reasonable.

Because this was a motion for summary judgment, it was the defendants' burden to show that there were no disputed issues of fact as to the reasonableness of the notice of the meeting. This required an

9

analysis as to whether the facts were undisputed that notice was reasonable. The court found that the notice was sufficient because the meeting room was packed and the media was present. It relied on the videotape of the meeting, but it is hard to know whether the meeting was packed with the general public or merely the city staff. Moreover, while three different and successive copies of the notice are in the record, it is not clear how they were disseminated. There is also no explanation of whether this was an emergency situation with some time deadline to approve the separation agreement. There remains a disputed issue of fact as to whether the notice for *this* meeting was reasonable. Without further development of the facts, summary judgment on this issue was premature.

For the foregoing reasons, we reverse the summary final judgment and remand for further proceedings consistent with this opinion.

TAYLOR and DAMOORGIAN, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***