DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

FLORIDA CITIZENS ALLIANCE, INC.,
a Florida not for profit corporation;
DOUGLAS LEWIS; BRANTLEY OAKEY;
and ERIC KONUK,

Appellants,

v.

THE SCHOOL BOARD OF COLLIER COUNTY,

Appellee.

No. 2D20-739

_____

September 10, 2021

Appeal from the Circuit Court for Collier County; Elizabeth V. Krier, Judge.

Brantley Oakey of The Law Office of Brantley Oakey, Naples, for Appellants.

Christopher D. Donovan and James D. Fox of Roetzel & Andress, LPA, Naples, for Appellee.

SILBERMAN, Judge.

This dispute arose from the selection of textbooks for the Collier County Public School District (the District). Florida Citizens Alliance, Inc., Douglas Lewis, Brantley Oakey, and Eric Konuk (the Plaintiffs) appeal a final judgment in favor of the School Board of Collier County (the School Board) that dismisses the four counts of the Plaintiffs' complaint with prejudice. We affirm the dismissal of counts two, three, and four without further discussion. Count one alleged violations of the Sunshine Law, section 286.011, Florida Statutes (2016), in the selection of the textbooks. We reverse the dismissal of count one and remand to the trial court.

In count one, the Plaintiffs alleged that the School Board created a process whereby "Instructional Materials Review Committees" (also referred to herein as Textbook Committees) reviewed textbooks, ranked them, eliminated some from consideration, and recommended a single textbook for each class subject. The Plaintiffs alleged that the School Board delegated a substantial portion of its authority regarding textbook selection to the Textbook Committees and that the Textbook Committees met in closed sessions without public meeting notices. Further, the Plaintiffs alleged that this resulted in violations of the Sunshine Law

2

because they and the public were denied the opportunity to view the full process by which the textbooks were reviewed, ranked, eliminated, and selected for recommendation before the School Board approved the recommendations. As a remedy, the Plaintiffs sought declarations that, among other things, the School Board violated the Sunshine Law; the School Board's final approval of the textbooks on April 11, 2017, is void ab initio; and the School Board is enjoined from permitting future Textbook Committees "to rank, eliminate, and select textbook recommendations without requiring that those meetings are publicly noticed and open to the public" in accord with the Sunshine Law.

The Plaintiffs filed an emergency motion to enjoin the School Board from approving the textbook purchases at a meeting on June 13, 2017, and a predecessor trial court judge denied the motion.[1] The School Board subsequently filed a motion to dismiss the complaint. In the final judgment ruling on the School Board's

_____

[1] The purchase of the textbooks was approved at the June 13, 2017, meeting, and an appeal of the order denying the emergency motion for temporary injunction was dismissed as moot. *See Fla. Citizens All., Inc. v. School Bd. of Collier Cnty.*, 247 So. 3d 720 (Fla. 2d DCA 2018).

motion to dismiss, the trial court stated that "its ruling [wa]s based on prior rulings of the Court," apparently referring to the prior order denying the Plaintiffs' emergency motion for temporary injunction.[2] In the final judgment, the court dismissed count one with prejudice for lack of standing.[3] The court also found with respect to count one that the Textbook Committees "are not an agency for purposes of the Sunshine Law," relying on *Knox v. District School Board of Brevard*, 821 So. 2d 311 (Fla. 5th DCA 2002), and School Board Policy 2520, attached as an exhibit to the complaint.

**Applicability of the Sunshine Law to the Textbook Committees**

On appeal, the Plaintiffs argue that the Textbook Committees are governed by the Sunshine Law. We agree and determine that the trial court erred in dismissing count one.

---

[2] On appeal, both parties rely upon the testimony and exhibits presented at the evidentiary hearing on the Plaintiffs' earlier injunction motion.

[3] The School Board concedes on appeal that the trial court erred in ruling that the Plaintiffs lacked standing to raise a Sunshine Law violation. The Sunshine Law "on its face[] gives the appellant standing without regard to whether he suffered a special injury." *Godheim v. City of Tampa*, 426 So. 2d 1084, 1088 (Fla. 2d DCA 1983); *see also Smith v. City of Fort Myers*, 944 So. 2d 1092, 1095 (Fla. 2d DCA 2006) (citing *Godheim* and recognizing that the Sunshine Law expressly confers standing).

A "district school board has the constitutional duty and responsibility to select and provide adequate instructional materials for all students." § 1006.28(1), Fla. Stat. (2016);[4] *see also* art. IX, § 4(b), Fla. Const. (requiring each school board to "operate, control and supervise all free public schools within the school district"). A school board has final decision-making authority on the selection and purchase of instructional materials. *See* §§ 1006.28(1), .40(2). Among a district school superintendent's duties with respect to instructional materials are to recommend plans for providing those materials and to "provid[e] for an evaluation of any instructional materials to be requisitioned that have not been used previously in the district's schools." § 1006.28(2)(a).[5]

A district school board is permitted by statute to "implement an instructional materials program that includes the review, recommendation, adoption, and purchase of instructional materials." § 1006.283(1). School Board Policy 2520 governs

---

[4] The statute was amended, and the provision is now found in section 1006.28(2). *See* ch. 2017-177, §§ 2, 7, Laws of Fla. (eff. July 1, 2017).

[5] This provision is now found in section 1006.28(3)(a). *See id.*

instructional materials and resources and contains a materials adoption policy. Policy 2520 recognizes the School Board's "constitutional duty and responsibility to select and provide adequate instructional materials for all its students to enhance student achievement and development." Policy 2520 also recognizes the statutory responsibility of the district superintendent (the Superintendent) to evaluate and recommend instructional materials to be requisitioned that previously had not been used in the District's schools.

Policy 2520 directs that "the Superintendent shall establish Instructional Materials Review Committees." These Textbook Committees must use a quantitative "rubric of evaluation" to enhance objectivity and must prepare minutes and reports to aid in the School Board's review. The Textbook Committees submit their reports "to the Superintendent for transmittal to the Board."

Policy 2520 also provides that parents may file a petition form objecting to "any instructional materials to be considered by the Board for adoption" in accord with section 1006.28. The School Board then holds a public hearing on timely filed objections, and its decision after the hearing is final and not subject to further review.

6

The Sunshine Law provides as follows:

(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, including meetings with or attended by any person elected to such board or commission, but who has not yet taken office, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.

§ 286.011(1); *see also* art. I, § 24(b), Fla. Const. Thus, the statute generally requires meetings of a governmental board at which official action is taken to be open to the public.

The purpose of the Sunshine Law is "to protect the public from 'closed door' politics"; therefore, "the law must be broadly construed to effect its remedial and protective purpose." *Sarasota Citizens for Responsible Gov't v. City of Sarasota*, 48 So. 3d 755, 762 (Fla. 2010) (quoting *Wood v. Marston*, 442 So. 2d 934, 938 (Fla. 1983)). Unless specifically exempted, all Florida governmental authorities are subject to the Sunshine Law's requirements. *Id.* (citing art. I, § 24(c), Fla. Const.). It is "an irreparable public injury" to violate the Sunshine Law; thus, when an official has violated the Sunshine

7

Law, it renders the official action void ab initio. *Id.* (quoting *Town of Palm Beach v. Gradison*, 296 So. 2d 473, 477 (Fla. 1974)).

The requirements of the Sunshine Law "may also apply to committees subordinate to or selected by traditional governmental authorities." *Id.* We must consider "the dispositive question" of "whether 'decision-making authority' has been delegated to the committee." *Id.* (quoting *Wood*, 442 So. 2d at 939). When decision-making authority has been delegated to the committee, its "meetings must be open to public scrutiny, regardless of the review procedures eventually used by the traditional governmental body." *Id.* To determine whether a delegation is one of decision-making authority, "the 'nature of the act performed' " must be evaluated rather than "the make-up of the committee or the proximity of the act to the final decision." *Id.* at 763 (quoting *Wood*, 442 So. 2d at 939).

School board actions are subject to the Sunshine Law. *Knox,* 821 So. 2d at 314. When a school board delegates part "of its decision-making authority to an advisory group, those meetings must be open to the public." *Id.* (citing *Wood*, 442 So. 2d 934). In contrast, the Sunshine Law does not apply "when a governmental

8

executive uses staff for a fact-finding and advisory function in fulfilling his or her duties." *Id.* at 315. A school board's staff, "which includes the superintendent, is generally not subject to the Sunshine Law." *Id.* at 314.

In *Knox,* an area superintendent appointed a team of employees, including herself, to interview applicants for a principal position. *Id.* at 312-13. The team evaluated the applicants "and assigned them numerical scores." *Id.* at 313. Based on the team's input, the area superintendent recommended at least two candidates to the county superintendent. *Id.* The county superintendent received all applications, and he decided which applicants he would interview and nominate to the school board. *Id.* The court determined that "[e]ven if the school superintendent is viewed as an 'agency' subject to the Sunshine Law," the role of the interview team was only "fact-finding or advisory," and thus the Sunshine Law did not apply to the team's meetings. *Id.* at 314.

In doing so, the court contrasted cases where the Sunshine Law did apply, including *Silver Express Co. v. District Board of Lower Tribunal Trustees of Miami–Dade Community College*, 691 So. 2d 1099 (Fla. 3d DCA 1997). The *Knox* court noted that in *Silver*

9

*Express* the "committee was governed by [the] Sunshine Law where its function was to weed through various proposals, determine which were acceptable and to rank them accordingly." *Knox*, 821 So. 2d at 314.

More recently, the First District also recognized that advisory committees which present "structured recommendations" that "eliminate opportunities for alternative choices by the final authority, or which rank applications for the final authority [] have been determined to be agencies governed by the Sunshine Law." *Carlson v. State*, 227 So. 3d 1261, 1265-66 (Fla. 1st DCA 2017) (alteration in original) (quoting *Silver Express*, 691 So. 2d at 1101). In *Silver Express*, a college's purchasing director, not the college's board, appointed the committee to evaluate contract proposals. 691 So. 2d at 1100. The court noted that "the committee's action helped to crystalize the decision to be made by the College." *Id.* Therefore, the committee was governed by the Sunshine Law. *Id.* at 1101.

Here, although the Superintendent has the statutory duty to recommend textbooks to the School Board, the School Board has the final decision-making authority to select the textbooks. In

addition, Policy 2520 directed the Superintendent to establish the Textbook Committees to review the textbooks and evaluate them using a quantitative rubric; thus, the Textbook Committees ranked the textbooks. In fact the Textbook Committees' selections for recommendation are the textbooks "with the highest number of points."

The School Board voted at its April 11, 2017, meeting to adopt the textbooks that the nine Textbook Committees had recommended—the textbooks with the highest number of points in each category. The Plaintiffs assert that the School Board did not discuss the substance of any of the textbooks that were recommended or of any of the other textbooks that were not recommended. Some members of the public spoke for a few minutes, and the School Board's discussion on the textbooks lasted under thirty minutes. The attachments to the complaint show that the School Board approved thirty-six recommended titles at that meeting. It is telling that if the School Board fails to ratify a Textbook Committee's selection, the School Board does not select another textbook that was reviewed. Rather, that Textbook

11

Committee would "reconvene" so that the "review and selection process will continue until the Board approves the selection."

The Textbook Committees' evaluation and ranking of the textbooks clearly "helped to crystalize the decision to be made by" the School Board. *Silver Express*, 691 So. 2d at 1100. In fact, under Policy 2520 the School Board cannot select a textbook on its own if it disagrees with a Textbook Committee's evaluation. Thus, the recommendations "eliminate[d] opportunities for alternative choices by the final authority" as well as "rank[ed] applications for the final authority." *Silver Express*, 691 So. 2d at 1101. Therefore, we conclude that the Textbook Committees have been delegated decision-making authority, that the Sunshine Law applies to meetings of the Textbook Committees, and that those meetings must be open to the public with reasonable notice provided. *See* § 286.011(1); *Sarasota Citizens*, 48 So. 3d at 762; *Silver Express*, 691 So. 2d at 1100-01.

## Reasonable Notice

The Plaintiffs contend that the School Board failed to give reasonable notice for the meetings of the Textbook Committees. *See* § 286.011(1) (requiring reasonable notice of public meetings). The

12

Sunshine Law does not define reasonable notice, "and the type of notice that must be given for a meeting is variable and depends on the facts of the situation." *Transparency for Fla. v. City of Port St. Lucie*, 240 So. 3d 780, 786 (Fla. 4th DCA 2018) (citing Op. Att'y Gen. Fla. 2000–08 (2000)).

The School Board posts its notices of regular School Board meetings on the public notice page of the District's website and in its "iNews" electronic newsletter. The School Board does not dispute that notice for meetings of the Textbook Committees was not given on the public notices page of the District's website or in the newsletter. Rather, the notice was posted to the instructional materials page of the District's website. If a member of the public navigated to the instructional materials page and had known to click on the link for the application to be a member of a Textbook Committee or to check the calendar for committee members, the person would have found when the meetings were scheduled. The Plaintiffs point out that a person would have had to click on nine different applications—one for each subject—to get all the dates for all the committee meetings. Nothing indicated that the meetings were open to the public.

13

We agree with the Plaintiffs that burying a notice inside a committee application and calendar on the instructional materials page of the District's website is an unreasonable way to give public notice of a meeting. Under these circumstances, we conclude as a matter of law that reasonable notice of the committee meetings was not given.

## Cure for Violation

The Plaintiffs also argue that the Sunshine Law violations by the Textbook Committees have not been cured because the School Board has never fully reexamined the work performed by those committees. "Sunshine Law violations can be cured by 'independent, final action in the sunshine,' " as "distinguished from mere ceremonial acceptance or perfunctory ratification of secret actions and decisions." *Sarasota Citizens*, 48 So. 3d at 765 (quoting *Tolar v. School Bd. of Liberty Cnty.*, 398 So. 2d 427, 429 (Fla. 1981)). "[O]nly a *full*, open hearing will cure a defect arising from a Sunshine Law violation." *Id.* (alteration in original) (quoting *Zorc v. City of Vero Beach*, 722 So. 2d 891, 903 (Fla. 4th DCA 1998)). In *Sarasota Citizens*, the Florida Supreme Court determined that any violations of the Sunshine Law by email exchanges were cured

14

when "multiple proposals were discussed and rejected before one was finally approved" by a board after four public board meetings. *Id.* at 766.

The School Board relies upon School Board meetings held on April 11 and June 1, 2017, as a cure for the violations. It also argues that all the materials the Textbook Committees considered were online for the School Board to consider. But as discussed above, at the April 11 meeting the School Board did not discuss the substance of the textbooks, and the School Board's discussion lasted under thirty minutes when it approved all thirty-six recommended titles. At the June 1 meeting, the School Board considered objections filed as to six of the thirty-six textbooks that the School Board had approved. Members of the public spoke at that meeting. After hearing and considering the objections, the School Board rescinded its approval of one textbook.

Policy 2520 required that the matter go back to the Textbook Committee for a new review and recommendation of an alternative selection. The School Board could not choose a textbook on its own by considering other alternatives from the textbooks that the committee had previously considered. We conclude that the School

15

Board's two meetings failed to cure the Sunshine Law violations because a full and open hearing was not had on the Textbook Committees' recommendations. *See id.* at 765.

## Conclusion

The Sunshine Law applies to the Textbook Committees, and the failure to give reasonable notice to the public of their meetings resulted in violations of the Sunshine Law. Further, the School Board did not cure the violations. Therefore, as to the dismissal of count one, we reverse the final judgment and remand to the trial court. We otherwise affirm the final judgment as to the dismissal with prejudice of the remaining counts.

Affirmed in part, reversed in part, and remanded.

CASANUEVA and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.